**KROVATIN KLINGEMAN LLC**
Henry E. Klingeman, Esq.
Kristen M. Santillo, Esq.
Ernesto Cerimele, Esq.
60 Park Place, Suite 1100
Newark, New Jersey 07102
(973) 424-9777

*Attorneys for Plaintiff Javelle S.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAVELLE S.,<br><br>Plaintiff<br><br>-v-<br><br>STATE OF NEW JERSEY JUVENILE JUSTICE COMMISSION; NEW JERSEY TRAINING SCHOOL; SUPERINTENDENT LIONEL HENDERSON, individually and an employee of the New Jersey Training School, KAREN A. SELMON, individually and as an employee of the New Jersey Training School; and JOHN DOES 1-10, and JOHN DOE ENTITY 1-10,<br><br>Defendants. | Document Electronically Filed<br><br>Civil Action No.<br><br>COMPLAINT AND JURY DEMAND |

Plaintiff Javelle S., by and through undersigned counsel, based on personal knowledge and upon information and belief, alleges as and for his Complaint as follows:

## NATURE OF THE ACTION

1. On June 1, 2015, Plaintiff was sexually victimized by Defendant Karen Selmon ("Selmon"), an employee of the New Jersey Training School ("NJTS"), while detained at the NJTS, a

male juvenile detention facility under the jurisdiction of the Defendant State of New Jersey Juvenile Justice Commission ("JJC").

2. The JJC, the NJTS and Defendant Lionel Henderson ("Henderson"), Superintendent of NJTS, were aware of a pervasive and longstanding culture of sexual victimization of male juvenile detainees by female staff at the NJTS.

3. The JJC, the NJTS, and Henderson were also aware of a widespread practice of correctional staff providing detainees with special privileges, including contraband, in exchange for favors. This practice made detainees, including Plaintiff, vulnerable to sexual victimization.

4. The JCC, the NJTS and Henderson were also aware that Selmon had a history of sexual misconduct and mental health issues.

5. Despite this confluence of risks, of which Defendants were aware, the Defendants placed Selmon in a position to supervise Plaintiff in an isolated setting without the supervision of other facility staff, which created an excessive risk of sexual victimization.

6. Due to the conditions created by Defendants, and their intentional and negligent actions, Plaintiff was sexually assaulted by Selmon, and continues to suffer severe psychological and emotional distress.

7. Plaintiff brings this action to obtain compensatory and punitive damages for violation of his rights under the United States Constitution and New Jersey law.

## PARTIES

8. Plaintiff Javelle S. is an individual residing in the City of Orange, Essex County, New Jersey. He is currently detained at the Juvenile Medium Security Facility ("JMSF") in Bordentown, New Jersey, and was detained at the NJTS on June 1, 2015, when the sexual assault occurred.

9. Upon information and belief, Defendant State of New Jersey, Juvenile Justice Commission is a governmental body and public entity represented by the Office of the Attorney General for the State of New Jersey with a principal place of business at PO Box 107, Trenton, NJ 08625-0107.

10. Upon information and belief, Defendant New Jersey Training School, is a public entity represented by the Office of the Attorney General for the State of New Jersey with a principal place of business at P.O. Box 500, Grace Hill Road, Monroe Township, NJ.

11. The NJTS is the JJC's largest juvenile correctional facility, housing approximately 200 male juveniles ranging in age from 12 to 23 years old.

12. Upon information and belief, Defendant Lionel Henderson is the Superintendent of the NJTS, with a business address of P.O. Box 500, Grace Hill Road, Monroe Township, NJ. He is sued individually and as the superintendent of NJTS.

13. Upon information and belief, Defendant Karen Selmon was at all relevant times an employee of the JJC and/or the NJTS, and at all relevant times had supervisory power over Plaintiff. Selmon is sued in her individual capacity and as an employee of NJTS. Upon information and belief, Selmon is a resident of New Jersey.

14. Defendants John Doe 1-10 and John Doe Entities 1-10 are individuals and/or entities who caused and/or contributed to the violation of Plaintiff's rights. Plaintiff will amend the Complaint to allege the Doe defendants' true names when they have been discovered.

## JURISDICTION AND VENUE

15. This court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

16. This Court has supplemental jurisdiction over causes of action arising under the laws of the State of New Jersey pursuant to 28 U.S.C. § 1367.

17. Venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

### JJC, NJTS and the Widespread Culture of Sexual Victimization of Juvenile Males By Female Staff

18. The Defendants JJC and the NJTS are charged by law with safeguarding the rights of a vulnerable population – youths aged 12-23 who are detained in their facilities.

19. By law, the JJC and the NJTS are supposed to maintain a zero tolerance policy for sexual assault.

20. Nonetheless, the JJC, the NJTS and Henderson were at all times aware of a widespread culture of sexual misconduct by female staff against juvenile males at NJTS. In a report published in January 2010, the United States Department of Justice, Office of Justice Programs, Bureau of Justice Statistics ranked the NJTS as among 13 juvenile facilities nationwide with high rates of sexual victimization, with as many as 1 in 3 juveniles reporting sexual victimization. *See* https://www.bjs.gov/content/pub/pdf/svjfry09.pdf.

21. In June 2013, the Bureau of Justice Statistics produced another report that showed that as many as 14.8% of detainees at the NJTS reported being victims of staff sexual misconduct. *See* https://www.bjs.gov/content/pub/pdf/svjfry12.pdf.

22. Both reports also specifically identified female facility staff as the primary perpetrators of sexual assault on juvenile males nationwide. The 2010 report noted that approximately 95% of all youth reporting staff sexual misconduct said that they had been victimized by female facility staff, and the 2012 report noted that 89.1% of reported incidents of sexual assault were males reporting sexual activity with female staff.

23. Based on these reports, the Defendants were well aware of the pervasive problem of female staff sexually victimizing male detainees at juvenile detention facilities, and they were specifically aware of the high rate of sexual victimization at NJTS.

24. Upon information and belief, this pervasive culture of sexual victimization continued at NJTS through the time that Plaintiff was sexually assaulted by Selmon in June 2015.

**The Widespread Practice of Correctional Facility Staff Exchanging Privileges, Including Contraband, In Exchange for Favors From Detainees**

25. Upon information and belief, there was a widespread practice that was well known at NJTS whereby correctional facility staff members would offer privileges to detainees, including contraband, in exchange for favors.

26. This widespread practice made the juvenile detainees vulnerable to sexual victimization at the hands of facility staff.

**Selmon's Prior History**

27. Upon information and belief, Selmon was an employee of the defendant JJC and/or JMSF and/or NJTS all relevant times.

28. Upon information and belief, before Selmon was employed by NJTS, she worked in the canteen of the JMSF, where it was well known that she engaged in an inappropriate sexual relationship with another staff member. Upon information and belief, it was also well known that Selmon suffered from mental health issues.

29. Despite this history of sexual misconduct and mental health issues, Selmon was transferred to NJTS on or about the beginning of 2015 to supervise a vulnerable population of juvenile detainees in the canteen at the NJTS.

**Plaintiff's sexual abuse at JJC and NJTS**

30. Plaintiff was first detained at NJTS in 2013 when he was 17 years old.

31. After an initial intake at NJTS, Plaintiff was transferred to JMSF, where he began an ongoing sexual relationship with a female staff member, KS.

32. Plaintiff was transferred to NJTS once again in or about May 2014, and began working in the canteen.

33. After he was transferred to NJTS, KS continued to contact Plaintiff and maintained an inappropriate intimate relationship with him.

34. In approximately mid-May 2015, Selmon was scheduled to work in the canteen supervising Plaintiff.

35. While, due to her past sexual misconduct and mental health issues, she was unfit to supervise juvenile detainees alone, Selmon was left to supervise Plaintiff and other detainees without any supervision.

36. Upon information and belief, in mid-May 2015, while Selmon was supervising Plaintiff, she was alone with him and another detainee in a clothing storage room with no cameras. At this time, Selmon made sexual advances toward Plaintiff, including a gesture suggesting that she wanted to perform fellatio on him.

37. On or about June 1, 2015, Selmon was again supervising Plaintiff and again made sexual advances toward him, offering to provide him with contraband in exchange for sex. She directed him to an isolated location, performed fellatio on him and had sex with him.

38. Upon information and belief, a third party detainee who learned of the sex acts reported Selmon's misconduct to staff at NJTS and Selmon was reported to authorities.

39. In or about September 2015, Selmon pled guilty to criminal sexual conduct, acknowledging that she committed an act of criminal sexual contact upon Plaintiff when Plaintiff was detained at NJTS and she had supervisory power over Plaintiff due to her professional status.

40. After the sexual assault, Plaintiff has suffered, and continues to suffer, severe psychological and emotional distress, including paranoia and nightmares.

41. On or about August 27, 2015, Plaintiff filed a Notice of Claim for Damages against the State of New Jersey.

**CAUSES OF ACTION**

COUNT 1

(Violation of Constitutional Rights Under § 1983)

42. Plaintiff repeats and realleges the allegations contained in paragraphs 1-40 of the Complaint as if each were set forth fully herein.

43. Plaintiff was detained under conditions that posed a substantial risk of harm to him. The JCC, the NJTS and Henderson were aware of the pervasive, longstanding and well-documented problem of the sexual victimization of male detainees by female facility staff at the NJTS.

44. The JCC, the NJTS and Henderson were also aware of the widespread practice of staff providing detainees with special privileges, including contraband, in exchange for favors. This practice made detainees vulnerable to sexual victimization.

45. The JCC, the NJTS and Henderson were also aware of Selmon's history of sexual misconduct, and her mental health problems.

46. Despite the Defendants' knowledge of these risks, the Defendants placed Selmon in a position to supervise Plaintiff in an isolated setting without the supervision of other facility staff, which created an excessive risk of sexual victimization.

47. As a result, Plaintiff was sexually assaulted by Selmon, in violation of his Eighth Amendment rights.

48. As a result of the sexual assault, Plaintiff suffered and continues to suffer severe physical, psychological and emotional distress.

COUNT 2

(Due Process Claim Under Federal and New Jersey Constitution Against Defendants JJC, NJTS and Henderson)

49. Plaintiff repeats and realleges the allegations contained in paragraphs 1-48 of the Complaint as if each were set forth fully herein.

50. By its policies, practices, acts and omissions, the Defendants have caused the Plaintiff to be subjected to rape and other sexual abuse in violation of his due process rights under the Fourteenth Amendments of the United States Constitution and Article I, Paragraph I of the New Jersey Constitution.

COUNT 3

(Due Process Claim Against Defendant Selmon)

51. Plaintiff repeats and realleges the allegations contained in paragraphs 1-50 of the Complaint as if each were set forth fully herein.

52. At all relevant times, Defendant Selmon was acting under color of state law.

53. Selmon raped and sexually assaulted Plaintiff as set forth herein.

54. As a result of the sexual assault, Plaintiff suffered and continues to suffer severe physical, psychological and emotional distress.

55. By virtue of her rape and sexual abuse, Selmon deprived Plaintiff of his due process rights under the Fourteenth Amendment to the United States Constitution and Article I, Paragraph I of the the New Jersey Constitution.

COUNT 4

(Negligent Hiring/Retention Against Defendants JJC, NJTS and Henderson)

56. Plaintiff repeats and realleges the allegations contained in paragraphs 1-55 of the Complaint as if each were set forth fully herein.

57. Due to her history of sexual misconduct and mental health issues, the JJC, the NJTS and Henderson knew or had reason to know that Selmon would engage in injurious conduct toward Plaintiff, that she was unfit and that it was dangerous for her to supervise juvenile detainees.

58. The Defendants could have reasonably foreseen that Selmon's history and characteristics created a risk of harm to detainees under her supervision.

59. Plaintiff's injuries were proximately caused by Selmon's unfitness and dangerous characteristics.

60. As a proximate result of the foregoing, Plaintiff has suffered and continues to suffer severe physical, psychological and emotional distress.

COUNT 5

(Negligent Supervision Against Defendants JJC, NJTS and Henderson)

61. Plaintiff repeats and realleges the allegations contained in paragraphs 1-60 of the Complaint as if each were set forth fully herein.

62. The Defendants failed to exercise reasonable care to control the actions of Selmon, in the event she was acting outside the scope of her employment, so as to prevent her from intentionally harming the Plaintiff.

63. The acts perpetrated by Selmon were conducted on the premises of the NJTS while Plaintiff was under the custody and care of the NJTS.

64. The Defendants knew, or should have known, of their ability to control Selmon and the necessity and ability to exercise such control.

65. As a proximate result of the foregoing, Plaintiff has suffered and continues to suffer severe physical, psychological and emotional distress.

COUNT 6

(Negligence Against Defendants JJC, NJTS and Henderson)

66. Plaintiff repeats and realleges the allegations contained in paragraphs 1-64 of the Complaint as if each were set forth fully herein.

67. Defendants owed Plaintiff a duty to house him in a facility reasonably safe from harm.

68. Defendants breached this duty and were therefore negligent.

69. As a proximate result of the foregoing, Plaintiff has suffered and continues to suffer severe physical, psychological and emotional distress.

COUNT 7

(Vicarious Liability Against Defendants JJC, NJTS and Henderson)

70. Plaintiff repeats and realleges the allegations contained in paragraphs 1-68 of the Complaint as if each were set forth fully herein.

71. The Defendants were negligent by virtue of the doctrines of vicarious liability and respondeat superior.

72. The wrongs of the individual Defendants were committed within the scope of their employment by JJC and/or NJTS.

73. The Defendants were reckless and/or failed to act with reasonable care.

74. The Defendants had a non-delegable duty to provide Plaintiff with a reasonably safe environment while housed at the NJTS.

75. As a proximate result of the foregoing, Plaintiff has suffered and continues to suffer severe physical, psychological and emotional distress.

COUNT 8

(Intentional Infliction of Emotional Distress Against Defendant Selmon)

76. Plaintiff repeats and realleges the allegations contained in paragraphs 1-75 of the Complaint as if each were set forth fully herein.

77. Selmon coerced Plaintiff, who was under her supervision, into the sexual acts alleged.

78. Selmon's actions in sexually assaulting Plaintiff were so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.

79. As a proximate result of this conduct, Plaintiff suffered physical harm and suffered and continues to suffer severe psychological and emotional distress.

COUNT 9

(Assault and Battery Against All Defendants)

80. Plaintiff repeats and realleges the allegations contained in paragraphs 1-78 of the Complaint as if each were set forth fully herein.

81. At no time did Plaintiff consent to the conduct of Selmon.

82. By virtue of threats and physical acts, Selmon did inflict unlawful assault and battery upon Plaintiff.

83. Defendants knew, or should have known of this conduct and taken steps to prevent it.

84. As a proximate result of this conduct, Plaintiff suffered physical harm and suffered and continues to suffer severe psychological and emotional distress.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief:

A. An order entering judgment for Plaintiff against Defendants on each of his claims for relief;

B. An award to Plaintiff for compensatory damages against all Defendants, jointly and severally, for their violation of his rights under the United States and New Jersey Constitutions,

C. An award to Plaintiff of punitive damages against Defendants based on their conscious, criminal wrongdoing and callous indifference to the constitutional rights and welfare of Plaintiff, in an amount to be determined at trial;

D. An award to Plaintiff of the costs of this action, including reasonable attorneys' fees; and

E. Such further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action of all issues so triable.

Respectfully submitted,

/s/ Kristen M. Santillo
**KROVATIN KLINGEMAN LLC**
60 Park Place, Suite 1100
Newark, New Jersey 07102
(973) 424-9777
ksantillo@krovatin.com

Dated: May 31, 2017